Filed 5/2/19; Certified for Publication 5/28/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| XAVIER NUNEZ, | |
| Plaintiff and Respondent, | G056585 |
| v. | (Super. Ct. No. 30-2015-00783269) |
| NEVELL GROUP, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Atkinson, Andelson, Loya, Ruud & Romo, Scott K. Dauscher and Amber S. Healy for Defendant and Appellant.

James Hawkins APLC, James Hawkins, Christina Lucio; Capstone Law, Ryan H. Wu, John E. Stobart and Bevin Allen Pike for Plaintiff and Respondent.

\*         \*         \*

INTRODUCTION

Nevell Group, Inc. (Nevell) filed a motion to compel arbitration of the claims filed against it by former employee Xavier Nunez. Nevell and the union to which Nunez belonged were parties to a collective bargaining agreement (CBA) that provided for arbitration of alleged violations of the relevant wage order. The trial court denied the motion based on Nevell's waiver of its right to compel arbitration, Nevell's delay in filing its motion, and the prejudice Nunez would suffer if the motion were to be granted. We affirm.

Nevell explicitly waived any right to compel arbitration by advising the trial court in writing that it would not file a motion to compel. Nevell also impliedly waived arbitration by permitting two court-ordered deadlines, by which it was to have filed a motion to compel, to pass, and by engaging in significant discovery and other litigation activities inconsistent with the right to arbitration. Nevell argues that he could not have filed a motion to compel arbitration before the Court of Appeal issued its opinion in *Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1 (*Cortez*). We reject that argument because *Cortez* does not reflect a change in the law.

Nunez would suffer prejudice if Nevell's motion to compel arbitration were granted at this point because Nevell's delay in seeking to compel arbitration unnecessarily extended the time the case was pending and caused Nunez to expend resources on litigation activities inconsistent with arbitration, such as class-based discovery, the preparation of a demand package based on a class action, and preparing and serving notice to the putative class members. Nevell delayed the filing of its motion to compel arbitration for more than three years after the complaint was filed, and more than eight months after the *Cortez* case was filed.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

I.

*THE COLLECTIVE BARGAINING AGREEMENT*

Nevell is a commercial construction contractor. From October 2014 to March 2015, Nunez was employed by Nevell as a stocker-scrapper. Nunez was a member of the United Brotherhood of Carpenters and Joiners of America through his affiliation with the Southwest Regional Council of Carpenters, Local No. 2361 (the Carpenters Union).

Nevell is a member of the Western Wall & Ceiling Contractors Association, Inc., a trade organization. Through its membership in this trade organization, Nevell is a signatory to a CBA with the Carpenters Union (the agreement). The agreement provides, in relevant part: "Section 12. Wage Order 16 of the Industrial Welfare Commission of the State of California, Department of Industrial Relations, is incorporated herein in its entirety. Any alleged violations of Wage Order 16 shall be subject to the grievance and arbitration provisions of Article VIII of this Agreement." The agreement also provides for arbitration of all disputes, grievances, or questions arising under the agreement (with exceptions not relevant here). Any arbitration award would be final and binding, and the agreement provides that the arbitration award would be enforceable by means of a petition to confirm.

II.

*APRIL 2015 THROUGH APRIL 2016— COMPLAINT FILED; NEVELL MISSES TWO COURT-ORDERED DEADLINES TO FILE A MOTION TO COMPEL ARBITRATION*

In April 2015, Nunez filed a complaint against Nevell, which was twice amended. As amended, the complaint alleged violations of the Labor Code due to unpaid minimum wages, unpaid overtime, failure to provide meal periods, failure to authorize and provide rest periods, failure to provide compliant wage statements, failure to timely pay wages owed at separation, and unreimbursed business-related expenses. The

3

amended complaint also alleged unlawful and unfair business practices in violation of Business and Professions Code section 17200 and a claim under the Private Attorneys General Act of 2004 (Lab. Code, § 2698).  Nunez sought to represent a putative class of more than 2,500 hourly, nonexempt workers employed by Nevell during the class period.

The case was stayed until the initial case management conference in November 2015, at which time Nevell represented that Nunez "was a union employee covered by a collective bargaining agreement that specifically exempted Nevell from the meal period and rest break requirements [and] that Nevell would seek to enforce the collective bargaining agreement and compel individual arbitration of [Nunez]'s claims." The trial court ordered Nevell "to file its motion to enforce the collective bargaining agreement by January 19, 2016," and continued the stay on discovery through that date.

In a letter dated December 18, 2015, Nevell's counsel demanded arbitration pursuant to the CBA.  Nunez's counsel refused the demand on January 13, 2016.  Nevell did not file a motion to compel arbitration by the court-imposed deadline, and Nunez served discovery demands after the stay on discovery lifted.

Before the second status conference, Nevell stated in writing:  "Defendant is electing at this juncture to move forward on its motion to compel arbitration and will file the petition to compel arbitration prior to the status conference and will seek to have the court stay all proceedings pursuant to Code of Civil Procedure section 1281.4." Nunez responded that because the trial court's deadline for filing a motion to compel arbitration had passed, the motion was untimely.

At the status conference, Nunez informed the trial court he intended to file an amended complaint.  Nevell advised the court "a motion to compel [arbitration] may be filed."  The court continued the status conference.  The court's notice of ruling states, in relevant part:  "The Court expects that the . . . amended complaint and the motion to compel arbitration will be filed prior to the hearing; if the documents have not been filed, counsel are to explain to the Court why they have not been filed."

4

## III.

*APRIL 2016—NEVELL ADVISES TRIAL COURT IN WRITING IT WILL NOT SEEK ARBITRATION; THE PARTIES CONDUCT CLASS DISCOVERY*

In the third joint status conference statement, filed in April 2016, Nevell stated: "Defendant has elected not to proceed with the petition to compel arbitration."

Nunez's motion for leave to file an amended complaint was granted over Nevell's opposition, and the second amended complaint was filed in June 2016. Nevell filed a motion to strike the new allegations of the second amended complaint, which the court denied. Nevell filed an answer to the second amended complaint; one of the affirmative defenses alleged was that the claims properly belonged in arbitration.

The parties participated in a fourth case management conference in August 2016. Nevell did not mention filing a motion to compel arbitration in the parties' joint statement. The parties engaged in discovery, including class discovery. Nunez filed motions to compel discovery responses in November 2016. Nunez withdrew the motions, without prejudice, when Nevell agreed to produce documents and contact information for putative class members. However, when Nevell refused to produce information for all the putative class members, Nunez renewed his motions to compel discovery, which were granted in October 2017.

## IV.

*AUGUST 2017—CORTEZ OPINION ISSUED; OCTOBER 2017 THROUGH MARCH 2018— DISCOVERY MOTIONS, NOTICE PROVIDED TO PUTATIVE CLASS, PARTIES PARTICIPATE IN MEDIATION*

On August 15, 2017, the Court of Appeal, Second District, Division Seven, issued its opinion in *Cortez, supra*, 15 Cal.App.5th 1. The court held that the "clear and unmistakable" language of the arbitration clause in the collective bargaining agreement at issue in that case covered the wage and hour claims asserted by the plaintiff employee.

(*Id.* at p. 14.)  The opinion was published on September 1, 2017, and became final October 1, 2017.  (Cal. Rules of Court, rules 8.264(b)(3), (c)(2), 8.500.)

In October 2017, the court granted Nunez's motion to compel production of contact information for the entire putative class.  When Nevell again failed to provide the information, Nunez applied ex parte in December 2017 for an order compelling production of the information.  At the hearing on the ex parte application, the court ordered Nunez to file the class certification motion by June 8, 2018.  In December 2017, *Belaire-West* notice[1] was sent to 2,686 putative class members through a third party administrator.

In March 2018, the parties attended a mediation session.  In preparation for the mediation, Nunez hired an expert to analyze the value of the case as a class action in order to prepare a demand package.  The mediation did not resolve the litigation.  The parties split the mediator's fees equally.

Nunez filed a motion for sanctions against Nevell due to Nevell's failure to comply with the October 2017 discovery order.  Nevell filed written opposition to the motion for sanctions.

V.

*APRIL 2018—NEVELL FILES MOTION TO COMPEL ARBITRATION*

On April 26, 2018, the night before the hearing on the motion for sanctions, Nevell filed a motion to compel arbitration.  The sanctions motion nevertheless went forward, and the trial court awarded sanctions in the amount of $3,300 against Nevell for "evasive" conduct and for violating the discovery order.

---

[1]  "*Belaire-West* notice" refers to an opt-out notice sent to potential class members in representative actions.  The notice is designed to protect the privacy rights of third parties and allow the recipient to object in writing to prevent his or her information from being disclosed to the party seeking discovery. (*Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 561.)

The trial court denied the motion to compel arbitration. The court found that Nevell "acted inconsistently with its right to compel arbitration resulting in prejudice to the Plaintiff." The court also found that Nunez would suffer significant prejudice if the motion were to be granted: "Plaintiff has propounded substantial discovery, Defendant has filed and opposed multiple motions, including motions to compel discovery and other motions/applications by Plaintiff, the parties sent out *Belaire-West* notices, and also engaged in private mediation regarding class claims." Nevell filed a notice of appeal.

DISCUSSION

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . The right to compel arbitration has been waived by the petitioner." (Code Civ. Proc., § 1281.2, subd. (a).)

Because the facts relating to the issue of alleged waiver are undisputed, we review the trial court's order denying the motion to compel arbitration de novo. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)

"State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. [Citation.] Although a court may deny a petition to compel arbitration on the ground of waiver [citation], waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes, supra,* 31 Cal.4th at p. 1195.) The following factors are relevant to the court's determination of whether Nevell waived its right to compel arbitration: (1) whether Nevell's actions are inconsistent with the right to arbitrate; (2) whether litigation procedures had been "'substantially invoked'" before Nevell

7

notified Nunez of its intent to arbitrate; (3) whether the motion to compel arbitration was filed close to the trial date, or after a long delay; (4) whether Nevell filed a counterclaim without seeking a stay; (5) whether "'important intervening steps'" had taken place, including but not limited to conducting discovery not available in arbitration; and (6) whether the delay in seeking arbitration prejudiced Nunez. (*Id.* at p. 1196.)

Nevell's written election not to proceed with the filing of a petition to compel arbitration was an explicit waiver of its right to arbitrate Nunez's claims. Notably, that explicit waiver occurred after Nevell had demanded in writing that Nunez submit his claims to arbitration and twice advised the trial court in writing that it would be filing a motion to compel, only to miss the court-imposed deadline both times.

Nevell contends that this waiver was not really a waiver because it could not have succeeded on a motion to compel arbitration before the issuance of the opinion of the Court of Appeal in *Cortez, supra*, 15 Cal.App.5th 1. Nevell contends that *Cortez* reflected a change in the law.

To the contrary, the *Cortez* court made clear that the only way to interpret the agreement's language requiring arbitration for wage order claims, when such claims must be brought under the Labor Code, is to conclude that the agreement to arbitrate applies to Labor Code claims. "While recognizing that provision[2] clearly and unmistakably requires arbitration of claims arising under the wage order, Cortez insists he brought his claims under the Labor Code, not the wage order. Therefore, he asserts, his Labor Code claims are not subject to arbitration. [¶] Cortez's argument has some superficial appeal. The Labor Code is not mentioned in the CBA, and no extrinsic evidence was offered to explain that omission. Ordinarily, as we stated in *Mendez* [*v.*

---

[2] The language of the clause requiring arbitration of Wage Order No. 16 claims at issue in *Cortez* is substantively similar to the language at issue here: "The CBA governing Cortez's employment provided that '[a]ny dispute or grievance arising from this Wage Order 16[] shall be processed under and in accordance with' the arbitration procedure outlined in article V of the CBA." (*Cortez, supra*, 15 Cal.App.5th at p. 13.)

8

*Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541], the failure to cite the statute at issue in the arbitration provision itself is fatal to any claim that the waiver of the right to enforce the statute in court is clear and explicit. [Citations.] [¶] Nonetheless . . . the agreement to arbitrate claims 'arising under' Wage Order 16 is clear and unmistakable. Although the Labor Code is not specifically mentioned, we cannot disregard the reality that an employee may enforce the protections of the wage order in court only by bringing a claim under the Labor Code. (*Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 74 . . . [there is no private right of action to enforce wage order; employee must rely on Lab. Code sections that require compliance with the wage order to enforce its terms]; *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1132 . . . [same].) As the Supreme Court observed in an analogous context, employers and employees become subject to the Labor Code requirements for minimum wage 'only under the terms of an applicable wage order[;] and an employee who sues [under the Labor Code] to recover unpaid minimum wages actually and necessarily sues to enforce the wage order.' (*Martinez v. Combs* (2010) 49 Cal.4th 35, 57 . . . ; accord, *Flowers, supra*, 243 Cal.App.4th at p. 86.) To hold that wage and hour disputes arising under Wage Order 16 are arbitrable under the CBA only in theory, but not in practice because they are, by necessity, brought under the Labor Code, would result in the very absurdity courts are required to avoid." (*Cortez, supra,* 15 Cal.App.5th at pp. 13-14, fn. omitted.)

The cases Nevell cites do not support its argument that *Cortez* reflected a change in the law and are factually distinguishable. Significantly, none held that a CBA requiring arbitration for wage order claims did not cover claims asserted under the Labor Code for actions violating the relevant wage order. In *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, the CBA provided that the employer would not discriminate against any employee based on race, color, religion, sex, age, or national origin, and that the employer would make a good faith effort to be an equal opportunity employer. (*Id.* at

9

p. 433.) That agreement also provided that all grievances or disputes arising from the interpretation or application of the agreement would be resolved by the agreement's grievance procedures. (*Ibid.*) Finally, the agreement provided that the grievance procedures would culminate in mandatory, binding arbitration. (*Ibid.*)

The *Vasquez* court concluded that the plaintiff's claims for disability discrimination under the Americans with Disabilities Act, disability and national origin discrimination under the California Fair Employment and Housing Act, and retaliatory harassment were not subject to the agreement's grievance procedures. "Neither disability discrimination, the FEHA, nor the ADA is mentioned in the CBA. Thus, we cannot conclude that the union clearly and unmistakably waived Vasquez's right to a judicial forum for his statutory disability discrimination claim. The general language of the CBA is simply insufficient." (*Vasquez v. Superior Court, supra*, 80 Cal.App.4th at p. 436.) "[T]here is a contractual commitment not to discriminate on the basis of national origin, but there is no express provision that the antidiscrimination commitment is subject to the grievance and arbitration provisions. Nor are the ADA and the FEHA explicitly incorporated in the CBA. Indeed, these statutes are not even mentioned. There is of course the general language making all contractual disputes subject to the grievance and arbitration procedure. . . . [W]ith respect to statutory discrimination claims, there is no presumption of arbitrability and the waiver of a judicial forum must be clear and unmistakable." (*Ibid.*)

The CBA in *Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, provided for binding arbitration as the final step in a three-stage grievance procedure. The portion of that CBA addressing compensation did not reference any statutes, and did not address the CBA's grievance procedures. The provision of that CBA addressing meal and rest periods provided the employer would comply with the applicable wage order and pay penalties due under the wage order for meal or rest period violations, and that the failure to pay such penalties would permit the

10

employee to pursue his or her remedies under the grievance procedures. (*Id.* at pp. 240-241.) The only reference to the wage orders in the agreement was a specific reference to the employer's agreement to pay penalties required under the agreement, the wage order or the Labor Code. (*Id.* at p. 249.) As the court noted, the "agreement to pay a penalty required by law is not the same thing as a union's agreement to waive members' rights to a judicial forum for statutory violations." (*Ibid.*)

The federal district court cases Nevell cites are not binding. Federal decisional authority does not bind the California Courts of Appeal on matters of state law. (*People v. Avena* (1996) 13 Cal.4th 394, 431; *Golba v. Dick's Sporting Goods, Inc.* (2015) 238 Cal.App.4th 1251, 1269.)

Nevell delayed filing its motion to compel arbitration in two different ways. First, the motion to compel was filed in April 2018, three years after the complaint was filed. Second, Nevell filed its motion to compel arbitration more than eight months after the *Cortez* opinion was issued.

Nunez was unquestionably prejudiced by Nevell's late decision to file a motion to compel arbitration. Nevell twice advised the trial court, in writing, that it intended to file a motion to compel. On both occasions, the trial court stayed the litigation, which ultimately had no effect but to delay the case because Nevell allowed the time to pass without filing a motion. After Nevell specifically waived its right to seek to compel arbitration, class discovery was conducted, Nunez filed discovery motions, and the parties sent *Belaire-West* notice to all putative class members. Nunez also hired an expert to analyze time and pay records in order to determine the value of the case as a class action, not an individual action. The expert's work was the basis for the demand package prepared for and used at the unsuccessful mediation session. Nunez expended significant time and money on these matters.

11

DISPOSITION

The order is affirmed.  Respondent to recover costs on appeal.



FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

Filed 5/28/19

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| XAVIER NUNEZ, | |
| Plaintiff and Respondent, | G056585 |
| v. | (Super. Ct. No. 30-2015-00783269) |
| NEVELL GROUP, INC., | O R D E R |
| Defendant and Appellant. | |

Plaintiff and Respondent Xavier Nunez and his appellate counsel, Capstone Law and John E. Stobart, have requested that our opinion, filed May 2, 2019, be certified for publication. It appears that our opinion meets the standards set forth in the California Rules of Court, rule 8.1105(c)(2), (3), (8). The request for publication is granted.

FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

GOETHALS, J.