Filed 6/27/25  Solorzano v. Mavenform CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ESTHER SOLORZANO,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MAVENFORM, INC. et al.,<br><br>  Defendants and Appellants. | A171332<br><br>(San Francisco County Super. Ct. No. CGC-24-612574) |

Defendants Mavenform, Inc., Leif Servicing, LLC, and Leif Technologies, Inc.[1] moved to compel arbitration of plaintiff Esther Solorzano's claims for deceptive advertising and unfair competition.  The trial court found the arbitration agreement contained an unenforceable waiver of Solorzano's right to seek public injunctive relief and denied the motion, which Pathrise now appeals.  Because the arbitration provision at issue here is materially indistinguishable from the waiver we held unenforceable in *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186 (*Ring*), we affirm.

---

[1] Mavenform does business as Pathrise and partners with the Leif entities, which are variously referred to as Pathrise's "loan servicer" and "program manager."  For purposes of this appeal, we refer to all three entities as Pathrise.

## BACKGROUND

Pathrise operates a "career accelerator program" that provides participants or "fellows" with resources—"including forums, career and industry video workshops, check-in sessions, and Pathrise's support system"—to advance their chosen career. Pathrise offers financing for its program in the form of income share agreements. Under the terms of these agreements, fellows "promise that if they accept a job paying more than a certain threshold amount," roughly $40,000 annually, then they will pay Pathrise a "small percentage" of their future income.[2]

In June 2021, Solorzano signed an income share agreement, which contained an arbitration provision that specifies, "THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS." The arbitration agreement extends to "any claim for injunctive or declaratory relief" and includes a class action waiver: "The arbitrator shall have no authority to conduct any class, private attorney general, or other representative proceeding, and shall award declaratory or injunctive relief only to the extent necessary to provide relief warranted by the Claim."[3]

---

[2] For Solorzano, the small percentage or "income share" was 18 percent of her gross "Qualified Monthly Earned Income." Fellows can discharge their obligations under the income share agreement by paying their monthly "income share" for six months or by reaching a $13,000 payment cap. Alternatively, if a fellow earns less than the "threshold amount," i.e., $40,000 annually for 24 months, then payment obligations under the income share agreement terminate.

[3] The "term 'Claim' has the broadest possible meaning" and "includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts . . . (including any claim for injunctive or declaratory relief)."

In February 2024, Solorzano initiated the underlying civil action against Pathrise; she filed the operative first amended complaint the following month. Solorzano alleged Pathrise's accelerator program was "an ongoing scheme" to "trap young job seekers" into entering "opaque, high-cost financing agreements." According to Solorzano, Pathrise unlawfully operated as an unbonded employment agency and/or an unapproved private postsecondary education institution, and, in either case, the income share agreements "are unenforceable under state law." Thus, Solorzano sought "for herself" and "the general public" damages, injunctive relief prohibiting Pathrise from "continuing to advertise and operate" unlawfully, restitution, and declaratory relief for alleged violations of the Employment Agency, Employment Counseling, and Job Listing Services Act (Civ. Code, § 1812.500 et seq.); the Student Loan Borrower Bill of Rights (Civ. Code, § 1788.100 et seq.); the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.); the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.); and the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.).

Pathrise moved to compel arbitration pursuant to the income share agreement, arguing that Solorzano's complaint did not seek public injunctive relief and, even if it did, the public injunctive relief claims could be "easily severed from Solorzano's remaining claims." In opposition, Solorzano argued the arbitration agreement was unenforceable because it included a public injunctive relief waiver, and the agreement's "poison pill"[4] precluded

_____

[4] The class action waiver included the following "poison pill" language: "If a determination is made . . . that the class action waiver is invalid or unenforceable, only this sentence of this Arbitration Agreement will remain in force and the remainder of this Arbitration Agreement shall be null and void, provided, that the determination concerning the class action waiver shall be subject to appeal."

severance of any non-arbitrable claims. On reply, Pathrise maintained that Solorzano's claims sought "non-public injunctive relief (which *are* subject to arbitration)," and, even if she did seek public injunctive relief, the income share agreement did not preclude Solorzano from obtaining such relief in arbitration.

Before the hearing, the trial court issued a tentative ruling denying Pathrise's motion. The court considered the limitation on the arbitrator's authority to issue injunctive relief "only to the extent necessary to provide relief warranted by the Claim" to be "a waiver of Solorzano's ability to seek public injunctive relief in arbitration," rendering the class action waiver unenforceable. "Because the agreement contains a poison pill that invalidates the entire agreement if the class action waiver is found unenforceable, the court cannot sever the provision from the agreement."

On August 12, 2024, following a hearing on Pathrise's motion, the court entered an order adopting its tentative ruling.

Pathrise timely appealed.

## DISCUSSION

In *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*), the California Supreme Court held "a predispute arbitration agreement is invalid and unenforceable under state law insofar as it purports to waive a party's statutory right to seek public injunctive relief." (*Ring*, *supra*, 91 Cal.App.5th at p. 1192, citing *McGill*, at p. 961.)

On appeal, Pathrise argues *McGill* does not apply because Solorzano's complaint does not seek public injunctive relief and, even if it does, the trial court misinterpreted the income share agreement's "*valid* prohibition of a class or representative action—a procedural limitation—as an *invalid* prohibition on public injunctive relief—a substantive remedy." Solorzano

4

responds that her complaint seeks public injunctive relief and the trial court correctly interpreted the agreement as waiving public injunctive relief in any forum.

" 'Under both federal and state law, arbitration agreements are valid and enforceable, unless they are revocable for reasons under state law that would render any contract revocable.' " (*Ring*, *supra*, 91 Cal.App.5th at p. 1196, quoting *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239.) Generally, the party seeking arbitration is required to prove the existence of an arbitration agreement, and the opposing party bears the burden of proving any defense. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) Because the facts here are not in dispute, we review the trial court's denial of Pathrise's motion to compel arbitration de novo.[5] (*Id.* at p. 236.)

## I. Solorzano's Complaint Seeks Public Injunctive Relief

Although Pathrise asserts "the vast majority of Solorzano's claims, and the relief sought, are unambiguously private in nature" and do not constitute public injunctive relief within the meaning of *McGill*, a fair reading of the complaint discloses multiple requests for public injunctive relief.

---

[5] Even under de novo review, however, we address only the " ' "issues which have been adequately raised and briefed." ' " (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913, quoting *Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.) Since Pathrise did not file a reply to Solorzano's responsive brief, our review is limited to the two arguments based on *McGill* that Pathrise raised in its opening brief. We do not address, for example, Solorzano's contention that the income share agreement's New York choice of law provision is "unenforceable" because Pathrise does not seek to enforce that provision. Likewise, we need not decide whether the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applies because "the FAA does not preempt *McGill*'s holding." (*Ring*, *supra*, 91 Cal.App.5th at p. 1208.)

"Public injunctive relief is relief that 'benefits the general public' and benefits an individual plaintiff only incidentally " 'or as "a member of the general public." ' " (*Ring*, *supra*, 91 Cal.App.5th at p. 1202, quoting *McGill*, *supra*, 2 Cal.5th at p. 955; accord, *Kramer v. Coinbase, Inc.* (2024) 105 Cal.App.5th 741, 746 [finding complaint alleging violations of CLRA and UCL sought public injunctive relief].) "In contrast, private injunctive relief 'primarily "resolve[s] a private dispute" between the parties [citation] and "rectif[ies] individual wrongs." ' " (*Ring*, at p. 1202; accord, *Ramsey v. Comcast Cable Communications, LLC* (2023) 99 Cal.App.5th 197, 204–205 (*Ramsey*).) *McGill* explained "that public injunctive relief 'is a substantive statutory remedy that the Legislature, through the UCL, the CLRA, and the false advertising law, has made available to [individuals] who meet the statutory standing requirements for filing a private action.' " (*Ring*, at p. 1202.)

Solorzano's first amended complaint seeks public injunctive relief both in the substantive causes of action and in the prayer. With respect to Solorzano's CLRA claim, for instance, she requests "private and public injunctive relief" prohibiting Pathrise and its affiliates from "issu[ing] and collect[ing] on legally void [income share agreements]." While the request includes a private component, Solorzano's benefit would be the same as, and incidental to, the benefit to other members of the general public. (*Ramsey*, *supra*, 99 Cal.App.5th at p. 212 [the plaintiff's prayed for relief "would benefit not only those who subscribe to Comcast (such as [plaintiff]), but any member of the public considering such a subscription"].)

Moreover, Solorzano's prayer for relief seeks to prospectively enjoin Pathrise "from continuing to advertise and operate" as an unapproved employment agency and/or unlicensed student loan servicer. If so enjoined, it

6

would " 'prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff,' " which constitutes public injunctive relief. (*McGill*, *supra*, 2 Cal.5th at p. 955; see also *Ramsey*, *supra*, 99 Cal.App.5th at pp. 210, 212 [request for "forward-looking" injunction "falls within *McGill*'s definition of public injunctive relief"].)

Ultimately, Solorzano seeks public injunctive relief against all three defendants: Pathrise, Leif Technologies, and Leif Servicing—and, in this appeal, Pathrise does not challenge the trial court's refusal to sever any claims. Thus, we do not reach Solorzano's argument that "one claim for public injunctive relief is enough." (Capitalization omitted.)

## II. The Income Share Agreement Impermissibly Waives Solorzano's Right to Public Injunctive Relief

As with any contract, our goal in interpreting an arbitration agreement "is to give effect to the mutual intention of the parties at the time the contract was formed." (*Duran v. EmployBridge Holding Co.* (2023) 92 Cal.App.5th 59, 65.) An arbitration agreement's language is given "its usual and ordinary meaning," and "the agreement must be interpreted as a whole." (*Ibid.*)

The income share agreement language at issue here—"shall award declaratory or injunctive relief only to the extent necessary to provide relief *warranted by the Claim*"—plainly limits the scope of relief available in a manner that mirrors the waiver discussed in *Ring*. The arbitration agreement in *Ring* limited injunctive relief " 'only to the extent necessary to provide relief *warranted by that party's individual claim*.' " (*Ring*, *supra*, 91 Cal.App.5th at p. 1204, italics added.) We determined such language violated *McGill* because it was "both commonly understood by parties to the arbitration agreements . . . [citation], and interpreted by courts to preclude public injunctive relief in arbitration." (*Ring*, at p. 1207.)

7

Here, contrary to Pathrise's assertion, the removal of the word "individual" before "claim" does not materially distinguish this case from *Ring*. Instead, like in *Ring*, the preamble to the arbitration provision emphasizes, "THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN *INDIVIDUAL* BASIS TO RESOLVE DISPUTES . . . ." (Italics added.) (*Ring, supra,* 91 Cal.App.5th at pp. 1194, 1199, 1204.) Further, because public injunctive relief does not generally benefit the individual claimant, it would not be "warranted by the Claim" even without specifying the " 'party's individual claim.' " (*Id.* at p. 1204; see also *Maldonado v. Fast Auto Loans, Inc.* (2021) 60 Cal.App.5th 710, 721 ["an injunction under the CLRA against Lender's unlawful practices will not directly benefit the [plaintiffs] because they have already been harmed and are already aware of the misconduct"].) Thus, there remains no material distinction between the limitation in Pathrise's arbitration agreement and that in *Ring*, which we held precluded any public injunctive relief in arbitration. (*Ring*, at pp. 1207–1208.)

We reject Pathrise's corollary argument that this arbitration agreement merely precludes procedural devices like class actions as opposed to substantive remedies such as public injunctive relief. Below, Pathrise implicitly acknowledged the arbitration agreement's prohibition of public injunctive relief when it asked the trial court to sever those claims from the remaining individual claims that it moved to compel to arbitration, rather than also moving to compel Solarzano's claims for public injunctive relief.[6]

---

[6] In her respondent's brief, Solorzano asserts Pathrise's severance argument and "conduct in this case" were "consistent with their arbitration provision *not* allowing public injunctive relief in arbitration." Pathrise does not dispute this contention in its briefing to us, nor did it respond to

(See *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1356–1357 [courts may look to " 'the subsequent conduct of the parties' " in interpreting contracts].)

We also disagree with Pathrise's suggestion that we follow *DiCarlo v. MoneyLion, Inc.* (9th Cir. 2021) 988 F.3d 1148, 1156, which approved of an "all-remedies clause" in an arbitration agreement. First, *DiCarlo* is not binding on us. (*Nunez v. Nevell Group, Inc.* (2019) 35 Cal.App.5th 838, 847–848 ["Federal decisional authority does not bind the California Courts of Appeal on matters of state law"].) Particularly when, as we noted in *Ring*, *DiCarlo* "appears to conflict with" published California Court of Appeal decisions. (*Ring*, *supra*, 91 Cal.App.5th at p. 1206.) Regardless, the "all-remedies clause" in *DiCarlo* is facially distinguishable from the arbitration provision in the income share agreement. The clause discussed in *DiCarlo* authorized the arbitrator to award " 'all remedies available . . . without limitation.' " (*DiCarlo*, at p. 1157.) This expansive wording is meaningfully different from the restrictive "only to the extent necessary" language used in the income share agreement's arbitration provision.[7]

---

Solorzano's argument to the trial court that the income share agreement's poison pill prevented severance, thereby undermining its current claim that the arbitration agreement permits public injunctive relief. (See *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 566 ["By failing to argue the contrary, plaintiffs concede this issue"]; *Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1424 ["appellants impliedly concede [the point] by failing to address [it]"].)

[7] Although it would not change the outcome, because the arbitration agreement unambiguously waives Solorzano's right to seek public injunctive relief, we need not interpret the agreement against the drafter, as Solarzano requests, which is a technique "used when none of the canons of construction succeed in dispelling the uncertainty." (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448; see also *Mejia v. DACM Inc.* (2020)

9

Therefore, we conclude Solorzano's operative complaint seeks public injunctive relief and the arbitration provision in the income share agreement impermissibly waives Solorzano's right to seek such relief in arbitration. Accordingly, the trial court did not err in denying Pathrise's motion to compel arbitration based on *McGill*.

## DISPOSITION

The order denying arbitration is affirmed. Solorzano may recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

---

54 Cal.App.5th 691, 705 [rejecting "unreasonable interpretation of the arbitration agreement" notwithstanding "general rules of construction"].)

DESAUTELS, J.

We concur:

RICHMAN, ACTING P.J.

MILLER, J.

*Solorzano v. Mavenform, Inc. et al.* (A171332)