Filed 6/29/26  Abelowitz v. Pediatric Associates Holdings CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| STEVEN ABELOWITZ, | |
| Plaintiff and Respondent, | G065579 |
| v. | (Super. Ct. No. 30-2024-01415810) |
| PEDIATRIC ASSOCIATES HOLDINGS, LLC et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Sheila Recio, Judge. Affirmed. Requests for judicial notice. Denied.

Kirkland & Ellis, David Horowitz, Michael Shipley, Kristin Rose and Tucker Ring for Defendants and Appellants Pediatric Associates Holdings, Pediatric Associates Holding, PA California MSO, Coastal Kids,

Craig Frances, Kendall Garrison, Brian Jackson, Chester Slonaker, Michael Manocchio and Andrew Thompson.

Miller Barondess, Amnon Z. Siegel and Colin H. Rolfs for Defendants and Appellants Summit Partners and TPG.

Cohen Williams, Marc S. Williams, Kathleen M. Erskine, Reuven L. Cohen and Talia Nissimyan for Plaintiff and Respondent.

\*       \*       \*

In this dispute between a medical doctor and former owner of a pediatric practice, plaintiff Steven Abelowitz, and the defendant entities which purchased and invested in the nonclinical aspects of the practice, defendants appeal after the trial court denied their motion to compel arbitration of all Abelowitz's causes of action. The court determined part of the complaint's requested relief constitutes public injunctive relief under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; UCL), but certain provisions of the relied-upon arbitration clauses preclude Abelowitz from obtaining such relief in any forum. It concluded those provisions are, therefore, unenforceable under *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*), and, in turn, a "poison pill" provision in the arbitration clauses renders the clauses void in their entirety.

Defendants challenge the trial court's determination, focusing solely on whether the arbitration clauses preclude Abelowitz from obtaining public injunctive relief in an arbitral forum. They argue public injunctive relief may be obtained through an individual UCL cause of action, and because nothing in the clauses' language prevents an arbitrator from issuing an injunction as to the parties in this case, their provisions do not violate *McGill*. We conclude otherwise. Certain of the arbitration clauses' provisions considerably and significantly limit available UCL public injunctive relief in

2

ways that "seriously compromise the public purposes the [UCL was] intended to serve." (*McGill, supra*, 2 Cal.5th at p. 961.) Consequently, they are just as unenforceable as those considered in *McGill*. Because the undisputed resulting impact of the clauses' poison pill is the voiding of the clauses in their entirety, the trial court properly denied defendants' motions to compel arbitration and we affirm the challenged order.

FACTS

Abelowitz is a pediatrician based in Orange County who founded a pediatric practice, Coastal Kids, in 2001. In 2020, Abelowitz entered into a transaction involving the sale of nonclinical aspects of Coastal Kids to defendant Pediatric Associates Holdings and its affiliates, who are also defendants in this case. Defendants Summit Partners and TPG are private investment firms that invested in those entities. The 2020 transaction was effectuated through numerous written agreements.

After a disputed series of events which led to the transfer of Abelowitz's ownership interest in Coastal Kids to another doctor and Abelowitz's termination, Abelowitz sued Pediatric Associates Holdings and its affiliates, Summit Partners, TPG, and other entities and individuals connected to them. The complaint alleges a variety of contract-based and other causes of action: wrongful termination, defamation, breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with contractual relations, failure to pay wages, retaliation in violation of Business and Professions Code section 2056, and violation of the UCL. In addition to various types of damages and compensation, the complaint seeks declaratory and injunctive relief. Regarding the latter, it expressly prays for "[a]n order and/or judgment enjoining [d]efendants from engaging in the corporate practice of medicine."

Not long after the filing of the complaint, defendants filed motions to compel arbitration. They argued that two agreements referenced in the complaint, which were part of the 2020 transaction, contain nearly identical arbitration clauses which "require arbitration of all of Abelowitz's causes of action, including against non-signatory defendants."[1]

The one paragraph arbitration clause they relied upon provides, in relevant part: "The [p]arties agree that all disputes, claims, or controversies that may arise between them relating to this [a]greement or the breach thereof . . . shall be submitted to arbitration by a single arbitrator in Orange County, in accord with the procedures of JAMS/Endispute in effect at the time any party demands arbitration, or such other procedures as the parties may agree upon . . . . Arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrator's authority to resolve and make written awards is limited to claims between [Abelowitz] and [the other signatory of this agreement] alone. Claims may not be joined or consolidated unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in this [a]greement, and without waiving either party's right of appeal, if any portion of this class action waiver provision is deemed invalid or unenforceable, then the entire arbitration clause in this [a]greement (other than this sentence) shall be void."

---

[1] Because the two arbitration clauses are identical in all relevant aspects, we hereafter refer to them in the singular.

4

Abelowitz opposed the motions on multiple grounds. First, he contended the entire arbitration clause was unenforceable. So his argument went, certain terms of the clause precluded him from obtaining public injunctive relief in any forum, rendering those terms unenforceable under *McGill*. And, the unenforceability of those terms triggered the clause's "poison pill," resulting in the entire arbitration clause being void and unenforceable. Alternatively, he argued a couple of the causes of action are not subject to arbitration because they "have nothing to do with the obligations contained in the [agreements] containing the arbitration clauses," and the arbitration clauses do not apply to 11 of the 13 defendants because they were not signatories to the agreements.

At the conclusion of a hearing on the motions, the trial court denied them. Its written order, which was the same as a tentative ruling provided before the hearing, the court agreed with Abelowitz's argument about the arbitration clause being void in its entirety. The court found the complaint sought public injunctive relief, but the arbitration clause precluded him from obtaining that relief because it "limit[ed] the arbitrator's authority 'to claims between [Abelowitz] and [the signatory defendants] alone.'" This violated *McGill*, and the arbitration clause's poison pill dictated the entire clause was, therefore, void.

Defendants timely appealed.

DISCUSSION

Defendants argue the trial court erred in denying their motions to compel because the arbitration clause is not unenforceable under *McGill*. Specifically, they argue it does not bar Abelowitz from obtaining public injunctive relief from an arbitrator as part of his individual cause of action brought under the UCL, meaning it does not make public injunctive relief

5

unavailable in all forums. Consistent with the concerns which led *McGill* to declare the arbitration provision before it unenforceable, we conclude provisions of the arbitration clause before us are unenforceable because they limit available UCL public injunctive relief in such a manner and to such an extent that they "seriously compromise the public purposes the statute[] [was] intended to serve." (*McGill, supra*, 2 Cal.5th at p. 961.) That unenforceability triggers the clause's poison pill, meaning the entire clause is void and Abelowitz may proceed on the entirety of the complaint in a judicial forum.

## I.

### THE *MCGILL* RULE

In *McGill*, a credit card account holder filed a class action against the issuing bank alleging it used deceptive practices in offering a "'credit protector'" insurance type plan to credit card customers. (*McGill, supra*, 2 Cal.5th at p. 952.) Among the claims were alleged violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), the UCL, and the false advertising law (Bus. & Prof. Code, § 17500 et seq.), and among the relief sought was an injunction prohibiting the bank "from continuing to engage in its allegedly illegal and deceptive practices." (*McGill*, at p. 953.) More specifically, the plaintiff sought to enjoin allegedly "'unfair, deceptive, untrue, and misleading advertising.'" (*Id*. at p. 957.)

Responding to a motion to compel arbitration filed by the bank, the plaintiff argued the relied upon arbitration agreement was unenforceable because it prohibited the pursuit of claims for "public injunctive relief" in any forum. (*McGill, supra*, 2 Cal.5th at p. 953.) The Supreme Court agreed.

In explaining its reasoning, the court first discussed the distinction between public injunctive relief and private injunctive relief.

Public injunctive relief is "relief that 'by and large' benefits the general public [citation] and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public.'" (*McGill, supra*, 2 Cal.5th at p. 955.) In contrast, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief," and is instead considered private injunctive relief. (*Ibid.*) In providing examples of public injunctive relief, the court explained that an injunction under the CLRA "against a defendant's deceptive methods, acts, and practices 'generally benefit[s]' the public 'directly by the elimination of deceptive practices." (*McGill*, at p. 955) Likewise, an injunction under the UCL or the false advertising law against deceptive advertising practices "'is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff.'" (*McGill*. at p. 955.)

The court then turned to the particular relief sought by the plaintiff and the arbitration agreement at issue. Regarding the former, the court concluded the enjoining of false, deceptive, and misleading advertising practices in the sale of the credit protector plan to credit card customers was public injunctive relief. (*McGill, supra*, 2 Cal.5th at pp. 956–957.) In contrast, the plaintiff's request for "'injunctive relief in the form of restitution and/or disgorgement'" was not public injunctive relief. (*Id.* at p. 957, fn. 1.) And regarding the agreement, the court noted it did not have to construe its provisions because the parties agreed it precluded the plaintiff from pursuing public injunctive relief in any forum—i.e. both court and arbitration. (*Id.* at p. 956.)

In concluding the complete prohibition on public injunctive relief was not permissible, rendering the arbitration provision invalid and

7

unenforceable, the court relied on the principle that "'a law established for a public reason cannot be contravened by a private agreement.'" (*McGill, supra*, 2 Cal.5th at p. 961, quoting Civ. Code, § 3513.) It explained that, among other things, this means a contractual waiver of a statutory provision is not valid if it seriously compromises the public purpose that the statute was intended to serve. (*McGill*, at p. 961.) "By definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law . . . is primarily 'for the benefit of the general public.'" (*Ibid.*) With that purpose in mind, the court concluded "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under th[o]se statutes would seriously compromise the public purposes the statutes were intended to serve." (*Ibid.*) Thus, insofar as an arbitration provision "purports to waive [the] right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law." (*Ibid.*) Some courts have subsequently referred to this as the *McGill* rule. (See, e.g., *Maldonado v. Fast Auto Loans, Inc.* (2021) 60 Cal.App.5th 710 (*Maldonado*); *Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691, 706 (*Mejia*).)

## II.

### ANALYSIS

As compared to the trial court, the relevant disputed matters on appeal are limited. The parties generally understand *McGill* to preclude enforcement of an agreement which prevents a party from seeking public injunctive relief in any forum. For purposes of this appeal, it is undisputed Abelowitz seeks public injunctive relief and the arbitration agreement precludes him from seeking such relief in court.[2] The crux of the parties'

---

[2] Because there is no dispute about whether the UCL injunctive relief sought by Abelowitz constitutes public injunctive relief, we do not

8

dispute revolves around interpreting the agreement as it relates to relief in arbitration. Defendants contend the agreement does not preclude Abelowitz from obtaining public injunctive relief in arbitration. Abelowitz argues it does.

Critical to our resolution of this issue are well-established principles of contract interpretation. Our mission is to give effect to the mutual intention of the parties at the time they formed the contract. (Civ. Code, § 1636; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524.) We discern such intent from the written contract alone, if possible, giving the words their ordinary and popular meaning unless a specialized or technical meaning is expressed or evident. (Civ. Code, §§ 1639, 1644; *Hess*, at p. 524.) Provisions must be read in their context and the whole of the contract must be considered (Civ. Code, § 1641; *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027), with due attention paid "to the circumstances under which it was made and the matter to which it relates." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752; see Civ. Code, § 1647). In the end, we must give effect to all provisions, avoiding any interpretation which would render words or clauses inoperative

---

address what appear to be conflicting views between state and federal courts about what falls within such a category. (See *Ramsey v. Comcast Cable Communications, LLC* (2023) 99 Cal.App.5th 197, 207–212 [describing conflict between state and federal courts, and adopting state court analysis]; *Hodges v. Comcast Cable Communications, LLC* (9th Cir. 2021) 21 F.4th 535, 544–546 [criticizing conclusions in *Mejia, supra*, 54 Cal.App.5th at pp. 702–703, and *Maldonado, supra*, 60 Cal.App.5th at pp. 720–721, that plaintiffs were pursuing public injunctive relief].) We also deny the requests for judicial notice filed by both sides as we find the matters to which they relate irrelevant. (See *OneTaste Inc. v. Netflix, Inc.* (2025) 116 Cal.App.5th 174, 194 [judicially noticed evidence must be relevant to disposition of matter].)

or meaningless. (Civ. Code, § 1641; *Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 923.)

Here, the arbitration clause precludes arbitration of class based or representative claims. In other words, all claims to be arbitrated must be brought on an individual basis. This limitation, alone, does not prevent Abelowitz from obtaining his desired public injunctive relief under the UCL because, as *McGill* recognized, such relief is available in conjunction with an individual claim. (See *McGill, supra*, 2 Cal.5th at pp. 959–961.)

The same is true of other terms that limit the claims to which the arbitrator's authority extends. Specifically, the agreement limits claims to those between Abelowitz and the other signatories of the agreement, and it disallows joinder or consolidation of claims absent a written agreement otherwise. Neither of these provisions impact Abelowitz's ability to obtain public injunctive relief from an arbitrator because he may obtain such relief as part of his individual UCL claim irrespective of joinder or consolidation. (See *McGill, supra*, 2 Cal.5th at pp. 959–961.)

Everything, therefore, turns on the following term in the arbitration clause: "No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration." Defendants argue this preclusion limitation is unlike any provision considered in cases cited by Abelowitz which invalidated arbitration provisions pursuant to *McGill*. (See, e.g., *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1194 [arbitrator may award injunctive relief "'only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim'"]; *Maldonado, supra*, 60 Cal.App.5th at p. 716 ["arbitrator may only award relief on behalf of the named parties"]; *Mejia, supra*, 54 Cal.App.5th at p. 694 [arbitrator may

10

only determine rights and obligations of named parties and may not make "award for the benefit of, or against anyone other than a named party"].) So their argument goes, the preclusion limitation "does not limit the binding force of an arbitral judgment as to the parties *in this case*, including a judgment that includes a public injunction," and thus "does not limit, much less fully curtail . . . the arbitrator's ability to issue a public injunction." Such an argument overlooks key facets of a UCL public injunction.

The purpose of the UCL "'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services,'" and the "'primary form of relief'" to ensure that protection "'is an injunction.'" (*McGill, supra*, 2 Cal.5th at p. 954.) In turn, a public injunction is "a substantive statutory remedy that the Legislature . . . has made available to those . . . who meet standing requirements for filing a private action" (*id.* at p. 965, italics omitted), and its purpose is to provide relief benefiting the general public (*id.* at p. 955). Relief cannot be for the benefit of members of the general public if the injunction issued by the

arbitrator has no preclusive effect in any dispute defendants may have with another person involving the same issue.[3]

In addition, one of the ways in which a public injunction is enforceable is through a civil action, "in the name of the people of the State of California," by the Attorney General, a district attorney, or certain county counsels or city attorneys. The available relief in such an action is a civil penalty in an amount not to exceed $6,000 for each day the conduct constituting the violation continues, with the money to ultimately be paid to the State and/or local government depending on the circumstances. (Bus. & Prof. Code, § 17207, subds. (a), (b).) Allowing the arbitration clause to be enforced as-is would strip away this significant facet of the UCL scheme because any injunction issued by an arbitrator could not be relied on in establishing the basis for a violation. In effect, the arbitration clause's

---

[3] Defendants implore us to agree with *Patrick v. Running Warehouse, LLC* (9th Cir. 2024) 93 F.4th 468, 478, which found that a preclusion provision identical to the one in this case did not conflict with *McGill. Patrick* reasoned the provision simply encompassed the rule established in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 833, that an arbitration award generally does not have nonmutual issue preclusive effect unless the arbitral parties agreed it would. (*Patrick*, at p. 478.) We disagree with *Patrick*'s conclusion. (See *Nunez v. Nevell Group, Inc.* (2019) 35 Cal.App.5th 838, 847–848 (*Nunez*) [federal authority not binding on state law matters].) *Vandenberg* applied public policy considerations to nonmutual collateral estoppel in the arbitral arena, generally. In contrast, *McGill* specifically concerned public injunctive relief, and in that context determined public policy precludes contractually removing the ability to obtain such relief in any forum. The public policy dictates of *McGill* mean that when a claim seeking public injunctive relief goes to arbitration (or court), any resulting injunction must be allowed to have the characteristics and enforceability of a public injunction lest it be the functional equivalent of a prohibition on obtaining such relief. Contractually prohibiting nonmutual issue preclusion removes a key characteristic of the relief.

preclusion limitation would limit the universe of injunction enforcement to a matter pursued by Abelowitz himself.

Predispute arbitration provisions, like the one before us, that limit available UCL public injunctive relief to injunctions devoid of a critical characteristic of public injunctive relief and that are incapable of being enforced through mechanisms provided for by the Legislature give rise to the same concerns expressed in *McGill*. Like a wholesale waiver of the right to seek public injunctive relief, they "seriously compromise the public purposes the statutes were intended to serve." (*McGill, supra*, 2 Cal.5th at p. 961.) Thus, consistent with *McGill*, they are "invalid and unenforceable under California law." (*Ibid*.)

Defendants urge us to follow *DiCarlo v. MoneyLion, Inc.* (9th Cir. 2021) 988 F.3d 1148, asserting it "is legally and factually indistinguishable." We disagree and decline to do so. First, *DiCarlo* is not binding on us. (*Nunez, supra*, 35 Cal.App.5th 838, 847–848 [federal decisional authority does not bind California appellate courts on state law matters].) Second, the arbitration agreement and the issue considered in *DiCarlo* are meaningfully different than those before us. There, the agreement contained an "all-remedies clause" which "'authorize[d]' the arbitrator to 'award all [injunctive] remedies available in an individual lawsuit under [California] law.'" (*DiCarlo*, at pp. 1153, 1156.) And the dispute resolved by the Ninth Circuit was whether public injunctive relief is available in an individual lawsuit or whether it may only be secured by a person "acting as a private attorney general." (*Id*. at p. 1153.) Relying on *McGill*, the court concluded an individual lawsuit may seek public injunctive relief. (*DiCarlo*, at p. 1156.) And because the arbitration agreement expressly placed no limitation on

13

awardable injunctive relief, the court determined its provisions were not invalid under the *McGill* rule. (*DiCarlo*, at p. 1156.)

The upshot of our conclusion that certain of the arbitration clause provisions are not enforceable is undisputed. The clause's poison pill expressly renders the entire clause void. Accordingly, the trial court did not err in denying defendants' motions to compel arbitration.

## DISPOSITION

The order is affirmed. Abelowitz is entitled to costs on appeal.

DELANEY, J.

WE CONCUR:

MOTOIKE, P. J.

SANCHEZ, J.

14